

1  ANTHONY ALLEN OLIVER
2  California State Bar # TBD
3  6320 Canoga Avenue, # 1500
   Woodland Hills, California 91367
4  Tel: (818) 207-1305
   Fax: (818) 207-1307
5

6  ANTHONY ALLEN OLIVER,
7  IN PRO PER



FILED
CLERK, U.S. DISTRICT COURT

MAY 2 7 2015

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  ANTHONY ALLEN OLIVER,<br>       Plaintiff, | )  Case No.:<br>) **CV15-3995** JO  KK<br>) |
| 12        vs. | ) |
| 13 | ) PLAINTIFFS COMPLAINT FOR |
| 13  COUNTY OF LOS ANGELES, public | ) CONSTITUTIONAL CIVIL RIGHTS |
| 14  entity; LOS ANGELES COUNTY | ) AND DAMAGES |
| 15  DISTRICT ATTORNEYS OFFICE, | ) |
|     administrative agency; JACQUES | ) 42 U.S.C. § 1983 |
| 16  GARDEN, an individual; ANDREW | ) |
| 17  KIM, an individual; JACKIE LACEY, | ) |
|     in her individual and official capacity; | ) [DEMAND FOR JURY TRIAL] |
| 18  BARBARA TORRES, an individual; | ) |
| 19  GERALD HOUSTON, an individual; | ) |
| 20  CITY OF OCEANSIDE, public entity; | ) |
|     MATTHEW LYONS, an individual; | ) |
| 21  DEBORAH NASH, an individual; | ) |
| 22  JOHN MULLEN, in his individual and | ) |
|     official capacity; OCEANSIDE CITY | ) |
| 23  ATTORNEYS OFFICE, public entity; | ) |
| 24  CYNTHIA LYONS, an individual; | ) |
|     ERIK HUGHES, individual; CYNTHIA | ) |
| 25  LYONS, individual; OCEANSIDE | ) |
| 26  POLICE DEPARTMENT, public entity; | ) |
|     AND DOES 1 through 25, inclusive. | ) |
| 27        Defendants. | ) |

28

**COMPLAINT FOR CONSTITUTIONAL AND CIVIL RIGHTS DAMAGES**
**42 U.S.C. § 1983**

Plaintiff Anthony Allen Oliver ("Plaintiff or Mr. Oliver")

## JURISDICTION, VENUE & PARTIES

1.     The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. §§ 1331, 1343, & 1367; and 42 U.S.C. §§ 1983 & 1988. This is a complaint for money damages by Plaintiff for redress of deprivation under color of law of his rights, privileges and immunities secured by the United States Constitution under the First, Fourth, Fifth, and Fourteenth amendments and the Civil Rights Act of 1871.

2.     Venue is proper in this Court pursuant to Sections 1391 and 1402(b) because a substantial amount of the conduct complained of occurred in the County of Los Angeles, State of California, and the Central District of California.

3.     Mr. Oliver was and is a citizen of the United States of America and currently lives in the State of California. In the summer of 2013, ("Plaintiff") filed a state lawsuit against a husband and wife for false imprisonment. Mr. Oliver then hired a process server who then affected service of the Defendants. When Defendants did not answer, a request for entry of default was entered.

4.     Shortly thereafter, Mr. Oliver and the process server had a business falling out and as a consequence, the process server was never paid by Mr. Oliver. Once the husband and wife received a copy of the default hearing being continued, the couple then used countless tax payers' dollars by obtaining counsel by and through the City of Oceanside. The husband is a current Oceanside Police officer used and wielded his official capacity to have the city attorney represent the couple. Once the Oceanside city attorney filed a notice of appearance, the City attorney's office then contacted the process server who is turn denied ever serving the couple and further denied signing the proof of services.

5.     In fact, the process server fraudulently informed the City attorney that Plaintiff signed the process server's name. The City attorney then obtained a false declaration stating these facts, and the City attorneys, the husband and wife then knew that the Plaintiff was on state parole, and contacted parole. From this point forward, the City Attorney was aware that Plaintiff had not signed the proof of services with the process servers name fraudulently.

6.     Instead of filing a police report, the husband and wife were instructed to call the Plaintiffs parole officer. The parole agent was contacted which led to a parole hold being placed on Plaintiff with an alleged parole violation based on forgery. In turn, criminal charges were then filed against Plaintiff and was later arrested.

7.     Plaintiff was later exonerated on both cases. Over the next year, Plaintiff is informed and believes and thereon alleges that Defendants, and each of them worked together to further fabricate false and corrupt evidence to prosecute Plaintiff for a crime that never occurred. It was later proven that the process server actually signed the proof of services. In fact, it was a crime that Defendants knew, or had reason to know, never even occurred. Plaintiff continued to be prosecuted by multiple corrupt prosecutors that were poised to try and convict Plaintiff for anything and everything. The husband and wife concocted this scheme to avoid paying the judgment on the default in the underlying civil case.

8.     This is an action brought by Mr. Oliver for damages caused by Defendants' reckless and grossly negligent conduct during their investigation of the arrest and detention of the Plaintiff. Defendant's complete disregard for the truth during their investigation resulted in an innocent young man spending almost fourteen months in jail. Mr. Oliver was deprived of his Constitutional rights to petition and receive redress from the Court; to be secure against unlawful search and seizure while on parole; to own and possess his property without interference; right not to be subject

to criminal charges based on fabrication of evidence; to be secure against deprivation of liberty without due process of law; and equal protection of laws. He was also deprived of the love, companionship, and respect of his children, family, and friends; deprived of his reputation and privacy; deprived of past and future income; and emotional tranquility.

9.      On or about June to August of 2014, Plaintiff presented the City of Oceanside, the County of Los Angeles, and the State of California with administrative claims in compliance with the California Government Tort Claims act under California Government Code 910, and each of the said claims were denied or rejected. Although administrative claims process need not be followed as a prerequisite to bringing suit as to the claims brought under 42 U.S.C. § 1983. Patsy v. Board of Regents, 457 U.S. 496 (1982); Heath v. Cleary, 708 F.2d 1376, 1378 (9th Cir. 1983).

10.     The claims herein are brought against the Defendants County of Los Angeles, ("County"); Los Angeles County District Attorney's Office, ("LCDAO"); Andrew Kim, ("DDA Kim") in his individual capacity; Jackie Lacey, ("DA Lacey") in her individual and official capacity; Jacques Garden, ("DDA Garden") in his individual capacity; Gerald Houston, ("Det. Houston") in his individual capacity; Barbara Torres, ("Inv. Torres"); for violating Plaintiffs clearly established rights guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and by the laws of the United States and of the State of California.

11.     The claims herein are brought against Defendants City of Oceanside, ("City"); Matthew Lyons, ("Off. Lyons") in his individual capacity; Deborah Nash, ("Nash") in her individual capacity; John Mullen, ("Mullen") in his individual and official capacity; Oceanside Police Department, ("OPD"); Oceanside City Attorney's Office, ("OCAO"); and (collectively "City Defendants") for violating Plaintiffs clearly

established rights guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and by the laws of the United States and of the State of California.

12.     Defendants and each of them were the agents and/or employees of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as such agents and employees within the said permission and consent of their co-Defendants.

13.     The allegations of the complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## GENERAL FACTUAL ALLEGATIONS

14.     In the summer of 2012, Mr. Oliver was arrested by the Defendants, Oceanside Police Officer Matthew Lyons, ("Off. Lyons") and his spouse Cynthia Lyons, ("Ms. Lyons") for an alleged incident that was proven to have never occurred. Defendants used ("Plaintiffs") parole status to effectuate the arrest by contacting his parole agent and informed them that ("Plaintiff") obtained information that ("Off. Lyons") would be on a certain train, at a certain time and that ("Plaintiff") went to San Diego just to harass ("Off. Lyons") and ("Ms. Lyons"). Plaintiff was arrested, held in Los Angeles County Jail without bail and the husband and wife never showed up to testify. All charges ranging from stalking, to criminal threat were dismissed. After the charges were dismissed, PLAINTIFF sued.

15.     Once PLAINTIFF filed the lawsuit in Los Angeles Superior Court, PLAINTIFF then asked Defendant Erik Hughes, HUGHES, who is a process server to go and serve OFF. LYONS and Ms. LYONS. Thereafter, HUGHES agreed to serve the couple and that HUGHES would allow PLAINTIFF to pay him later. Upon information and belief HUGHES served the couple at their home based on the facts

that HUGHES signed and returned to PLAINTIFF two signed proof of services. Once the proofs were filed, the PLAINTFF never paid HUGHES. In fact, PLAINTIFF and HUGHES were in the process of starting a business and at a moment's notice, that business relationship was terminated when PLAINTIFF caught HUGHES trying to defraud four Los Angeles based attorneys. When PLAINTIFF discovered this, PLAINTIFF severed ties with HUGHES. Shortly thereafter, HUGHES still demanded money for the two proofs of services and PLAINTIFF refused to pay.

16.    Several weeks later, PLAINTIFF appeared in Los Angeles Superior Court and filed for default against OFF. LYONS and MS. LYONS for failure to file an answer. The default hearing was continued so that PLAINTIFF could amend the Complaint. Two weeks later, PLAINTIFF received a call from Oceanside City attorney, Defendant Deborah Nash, NASH, who informed PLAINTIFF her and Defendant John Mullen, MULLEN, also a city attorney is representing the husband and wife. Both NASH and MULLEN thereafter asked PLAINTIFF to voluntarily set aside the default so the City of Oceanside, CITY, could file an answer. When PLAINTIFF refused, NASH and MULLEN threatened PLAINTIFF. Days later, NASH and MULLEN learned through OFF. LYONS was on California state parole. Defendants NASH, MULLEN, OFF. LYONS and MS. LYONS then contacted Defendant HUGHES to see if he did in fact sign the proof of services. Mr. HUGHES denied serving anyone and also signing the judicial council forms. Defendants NASH, MULLEN, OFF. LYONS and MS. LYONS asked HUGHES to sign a declaration the he did not sign the forms, and denied doing the service. Mr. HUGHES acting under color of law, signed the declaration for CITY, NASH, MULLEN, OFF. LYONS and MS. LYONS. Defendants NASH and MULLEN knew that HUGHES really did sign the proof of services, but concealed this evidence so that NASH, MULLEN, OFF. LYONS and Ms. LYONS could appear in Court and seeking to set aside the $ 20, 000,

000.00 default pending against OFF. LYONS and his wife. With the false declaration in hand, NASH, MULLEN and HUGHES appeared in Court and was unsuccessful in setting aside the default.

17.    A few days later, NASH and MULLEN sent PLAINTIFF an email asking once more for PLAINTIFF to set aside the default, and NASH advised PLAINTIFF that if he failed to do so, NASH, MULLEN, OFF. LYONS and MS. LYONS would contact PLAINTIFFS parole officer, informed the agent that PLAINTIFF forged HUGHES' name to the proof of services. PLAINTIFF still refused. The following day, NASH, MULLEN, OFF. LYONS and MS. LYONS all contacted PLAINTIFFS parole agent and informed Agent Anthony Del Real, Agt. Del Real that PLAINTIFF committed a felony and that CITY, NASH, MULLEN and OFF. LYONS could prove it.

18.    On March 26th, 2014, Agt. Del Real instructed PLAINTIFF to appear at the parole office. When PLAINTIFF did, Agt. Del Real informed PLAINTIFF that a police officer, and two attorneys informed him that PLAINTIFF obtained a twenty million dollar default against a highly decorated Police Officer. And that MULLEN, NASH and OFF. LYONS were not going to allow a convicted felon take a cop's home who worked so hard for. Agt. Del Real showed PLAINTIFF a fax from Oceanside City Attorneys officer, OCAO, and that OFF. LYONS desired prosecution. However, with Defendants NASH, MULLEN, OFF. LYONS and Ms. LYONS knowing that the PLAINTIFF was on parole, they knew that they could effectuate another baseless arrest to get PLAINTIFF in custody and attempt to set aside the default. Agt. Del Real advise PLAINTIFF that an investigation would be done and to come back to the office the following day.

19.     In that time, HUGHES was instructed by CITY, NASH, MULLEN, and OFF. LYONS to contact Agt. Del Real to inform him that PLAINTFF forged his name. Mr. HUGHES did just that.

20.     The following day, PLAINTIFF appeared at the Van Nuys parole office as he was instructed, and it was then PLAINTIFF was interview by unit supervisor, Agent Derek Faraldo, Agt. FARALDO who in turn informed PLAINTIFF parole received a call from a person who identified himself as a police officer and asked Agt. FARALDO for a "cop to cop" favor and demanded PLAINTIFF be placed under arrest. State parole acting on the word that OFF. LYONS and the others, accepted the fact that OFF. LYONS was a police officer, and that PLAINTIFF was not.

21.     On March 27th, 2014, PLAINTIFF was placed under arrest, booked and transported to the Los Angeles County Jail, LACJ and booked on suspicion of a parole violation. At all times, PLAINTIFF was held without bail. The Defendants NASH, MULLEN, OFF. LYONS, Ms. LYONS and HUGHES all knew PLAINTIFF would not be able to post bond. Not even 72 hours later, CITY, OCAO, NASH, MULLEN, OFF. LYONS, MS. LYONS, and HUGHES appeared at the Stanley Mosk Court to vacate the defaults, but was denied. The Court was already informed PLAINTIFF was in custody. Once in custody, PLAINTIFF was charged with a parole violation of forgery of judicial court documents.

22.     During the next several weeks, NASH, MULLEN, OFF. LYONS, Ms. LYONS and HUGHES instigated the charges being filed. The Defendants NASH, MULLEN, OFF. LYONS and Ms. LYONS within the next several weeks discovered that PLAINTIFF did not sign HUGHES' name to the proofs and that HUGHES signed his own name. A genuine issues of fact existed as to who's signature appears on these documents. In that time, Mr. Oliver did not accept a plea agreement and demanded a revocation hearing. Days later, PLAINTIFF was informed that the Los Angeles

**COMPLAINT FOR CONSTITUTIONAL AND CIVIL RIGHTS DAMAGES**
**42 U.S.C. § 1983**

Sheriff's Department, LASD opened an investigation against PLAINTIFF. Deputy Gerald Houston, DEP. HOUSTON spear headed the investigation. In the following weeks, DEP. HOUSTON was unable to find any traces of forgery on the proof of services.

23.    After PLAINTIFFS arrest and incarceration, PLAINTIFF lost custody of his children, and everything he owned in his apartment. Locked away inside the LACJ, PLAITNIFF was unable to retrieve everything he owned. Defendants had to use PLAINTIFF parole status to arrest PLAINTIFF. This was not the first time OFF. LYONS and Ms. LYONS contacted PLAINTIFFS parole agent to have PLAINTIFF arrested. It was not the second time, it was now the third time. And each time, Mr. Oliver spent weeks in jail to only have the charges dismissed as each time OFF. LYONS and Ms. LYONS failed to show up to testify. Through his employment with CITY, OFF. LYONS knew that going through the parole officer, it would be for reasons that establish arbitrary, capricious and harassing reasons. This was the third baseless arrest. As an Oceanside police officer, all Officers are trained to contact a person's parole officer. Even if like here, it is because OFF. LYONS has personal animosity towards PLAINTIFF based on allegations by OFF. LYONS that PLAINTIFF attempted to have an affair with Ms. LYONS dating back to 2005 when PLAINTIFF met Ms. LYONS in an internet chatroom.

24.    The investigation report was finalized by DEP. HOUSTON, it forwarded to the Los Angeles County District Attorney's Office, LCDAO. At all times relevant. DEP. HOUSTON who is in fact not a detective, but simply a bailiff who works at Stanley Mosk Courthouse. Dep. HOUSTON lacked the most bare minimal police training. By and through the County of Los Angeles, COUNTY and LASD, the training that DEP. HOUSTON received from COUNTY and LASD is so poor, that it amounts to deliberate indifference to PLAINTIFFS Constitutional and Civil rights.

25.     After the report was filed, Los Angeles County District Attorney Jackie Lacey, DA LACEY was informed that a crime was committed against a member of law enforcement and that due to the fact DA LACEY has a zero tolerance policy on crime against peace officers, that DA LACEY even created the Crime Against Peace Officers, CAPO unit in the LCDAO. Days later, DA LACEY assigned this case for filing. Mr. Oliver was later charged with a violation of Penal Code section 134 and 115.

26.     Without the slightest bit of evidence that a crime was committed, PLAINTIFF remained optimistic that justice would prevail and that DA LACEY would dismiss the charges. Instead, DA LACEY assigned the case to district attorney and Defendant Jacques Garden, DDA GARDEN, SBN # 185515, who was desperate for any and all evidence against PLAINTIFF, that DDA GARDEN and co-Defendant Andrew Kim, DDA KIM, SBN # 199807, along with DEP. HOUSTON went to Stanley Mosk Courthouse and interviewed several witnesses as the Court. Ranging from court clerks, to even none other than the default judge, Los Angeles Superior Court judge, Elizabeth Feffer, in turn identified PLAINTIFF through a photo lineup that DDA GARDEN put together for Judge Feffer. Thereafter, DDA GARDEN and DDA KIM convinced Judge Feffer to become a witness in the criminal case against PLAINTIFF. Judge Feffer agreed as her name later appears on the prosecutions witness list. Over the next several weeks, DA LACEY, DDA GARDEN and DDA KIM went and interviewed Judge Feffer to try and strengthen their case. Instead of acting as officers of the Court, DA LACEY, DDA GARDEN and DDA KIM were out interviewing witnesses, collecting evidence and even meeting the process server, Mr. HUGHES at his home. When prosecutors are not acting as officers of the Court, they are only entitled to qualified immunity instead of absolute immunity. Both DEP. HOUSTON and DDA GARDEN did this anyways and  traveled to Victorville,

- 10 -
**COMPLAINT FOR CONSTITUTIONAL AND CIVIL RIGHTS DAMAGES**
**42 U.S.C. § 1983**

California to meet HUGHES and dropped off some paper and instructed HUGHES to write his name out 100 times and that DDA GARDEN and DEP. HOUSTON would be back to collect them. Defendants DA LACEY, DDA GARDEN, DDA KIM, and DEP. HOUSTON knew and had reason to know that by obtaining these signatures from HUGHES without any of the Defendants witnessing or notarizing any of the sample signatures, and/or by allowing HUGHES to sign his name and mail back the samples, the Defendants knew they were using investigative techniques that were so coercive and abusive that the Defendants knew or had reason to know that the exemplar signatures would yield false information.

27.    At a later time, HUGHES mailed back the handwriting samples to the Los Angeles County Sheriffs crime lab. Investigator Barbara Torres, INV. TORRES then performed a serious of tests of the question signatures and the newly obtained samples from HUGHES. With PLAINTIFFS preliminary hearing approaching, INV. TORRES knew that she had to turn over her investigation report. The Defendants, and each of them new and had reason to know that the samples mailed from HUGHES could not be ruled liable as HUGHES had time to tamper with the samples. The investigative techniques by DDA GARDEN, DDA KIM and DEP. HOUSTON knew the results would yield false answers, but used those results anyways. INV. TORRES completed her investigation of the questioned signatures. Notwithstanding the fact that Inv. TORRES must turn over all reports to the PLAINTIFFS attorney, INV. TORRES failed to do so which did in fact cause PLAINTIFF to be held to answer. In fact, it took INV. TORRES over four months to turn over her investigative report to the Defense causing the PLAINTIFF to serve additional jail time. The results of the tests she performed on the signatures were now published. The results were staggering. Once compared to the known signatures of HUGHES that appeared on other court proof of services, INV. TORRES published her opinion as inconclusive as to the Defendant.

With the cat out of the bag, Defendants DA LACEY, DDA KIM, DDA GARDEN, HOUSTON, NASH, MULLEN, OFF. LYONS, Ms. LYONS and HUGHES were now exposed.

28. Their personal prejudices blinded them to the fact that there was not the slightest bit of evidence to suggest that Mr. Oliver committed forgery and that all the signatures of file in the civil case was nothing but natural, and that Mr. Oliver was arrested for a crime he did not commit, but also a crime that never came close to occurring. At no time did the Oceanside Police Department, OPD, CITY, NASH, MULLEN, OFF. LYONS or MS. LYONS ever investigate the validity of HUGHES allegations. Instead of the CITY, NASH, MULLEN of OFF. LYONS sending the so called fake signatures to a lab, they just decided to leave PLAINTIFF in jail. The Defendants owed a duty to investigate the allegations before arresting PLAINTIFF. In addition, once CITY, OPD, NASH, MULLEN, OFF. LYONS and Ms. LYONS were informed about the results of the investigation, they did nothing to move to free PLAINTIFF. The Defendants, and each of them owed a duty to PLAINTIFF to come forward with the truth, but instead colluded with DA LACEY, DDA GARDEN, DDA KIM, LCDAO, COUNTY, LASD, DEP. HOUSTON and HUGHES to keep Mr. Oliver is jail for as long as possible.

29. Plaintiff is informed and believes, and on that basis alleges that Defendants, and each of them, knew or had reason to know that DEP. HOUSTON did not have the experience to investigate this alleged forgery crime. Plaintiff is informed and believes that this was the first criminal investigation that DEP. HOUSTON and INV. TORRES ever conduct in the field of forgery. As Sheriff employee's, their experience and qualifications were slim to none. Upon information and belief, PLAINTIFF alleges the training that LASD and COUNTY provide to their employees is so inadequate, that it gives rise to violations of PLAINTIFF Constitutional rights.

30.    Moreover, the COUNTY and LADAO spent thousands of dollars in hiring two handwriting experts who also concurred that the question signatures were nothing but genuine. The Defendants, and each of them, knew or had reason to know that the signatures of HUGHES were corrupt, false, implausible, and completely lacking in credibility. To check for presence of forgery, a person would take the questioned document along with a known document and place it on an illuminated light. If they are genuine, the signatures would be on top of one another. If they were forged, it would show that in the strokes of the person's signature. These were genuine. Shortly after PLAINTIFF was held to answer, PLAINTIFFS defense attorney later hired handwriting expert, Ms. Sheila R. Lowe, MS. LOWE who later opined that the questioned signatures, and known signatures of HUGHES were a match. Ms. Lowe finalized a report, pointed out are the similarities and PLAINTIFFS defense counsel steadfastly turned to results over to Defendants DA LACEY, DDA GARDEN, and DDA KIM, who in turn thought that Defendants would dismiss the charge against the PLAINTIFF immediately, but the Defendants, and each of them failed and refused to do so. Instead, holding PLAINTIFF in custody subjecting him to longer incarceration.

31.    With the inconclusive report by COUNTY, LADAO, and INV. TORRES, and the report by MS. LOWE, PLAINTIFF thought justice would prevail. But DA LACEY, DDA GARDEN, and DDA KIM subjected PLAINTIFF to longer incarceration, failed to turn over evidence in a timely manner, and once confirmed that PLAINTIFF did not commit this alleged crime, DA LACEY, DDA GARDEN and DDA KIM did nothing to free PLAINTIFF, even though DA LACEY, DDA GARDEN, DDA KIM owed a duty not to subject PLAINTIFF to longer incarceration.

32.    At all times relevant, Defendants, and each of them knew PLAINTIFF never committed forgery. The Defendants assert that they had PLAINTIFF arrested and prosecuted for forgery and that PLAINTIFF committed a crime. When in fact,

Defendants CITY, OPD, OCAO, NASH, MULLEN, OFF. LYONS, MS. LYONS, and HUGHES' true reason for having PLAINTIFF arrested was to set aside the default that PLAITNIFF obtained against the husband and wife. Plaintiff alleges on information that the Defendants had PLAINTIFF arrested for exercising his right to petition the Court, and not because a crime happened. A triable fact does exist as to why the Defendants had PLAINTIFF arrested.

33.    During their investigation prior to Mr. Oliver's arrest, the COUNTY, LACDA, and DEP. HOUSTON informed NASH, MULLEN, OFF. LYONS and MS. LYONS that it would be weeks, if not months before an investigation would be completed on whether PLAINTIFF committed forgery. The Defendants, could not wait that long. With the default just weeks away in the amount of $ 20 million dollars, NASH, MULLEN, CITY, OPD, OCAO, OFF. LYONS and MS. LYONS had to act quickly. So the Defendants decided to call PLAINTIFFS parole agent and insist that PLAINTIFF committed forgery.

34.    The Defendants, DA LACEY, DDA GARDEN, DDA KIM, LACDA, and DEP. HOUSTON knew or should have known during the investigation that preceded Mr. Oliver's arrest that there was no evidence on which to arrest, charge, and incarcerate Mr. Oliver for the crime of forgery. They knew or should have known that the story by HUGHES was false, signed false declarations under the penalty of perjury, and knew the signatures were genuine and that there was no evidence to support their theory that Mr. Oliver committed forgery for the purpose of obtaining the defaults.

35.    Plaintiff is informed and believes, and on that basis alleges that the Defendants were consumed with finding "any evidence" irrespective of its credibility to establish probable cause to arrest and incarcerate PLAINTIFF for their own personal ambitions and biases. Sheriff and District Attorney Investigators spent a year on this

investigation and needed to justify their continued detention of the PLAINTIFF and for the sake of their careers by using any evidence they could do to inculpate Mr. Oliver.

36.    Plaintiff is informed and believes that DDA GARDEN, DEP. HOUSTON and INV. TORRES knew there were additional handwriting samples available on other proofs of services, but failed to seek testing of the samples to confirm they were genuine, but failed and refused to do so. The Defendants knew that if INV. TORRES discredited her or LASD'S test results it would be a public embarrassment not only for herself, but also for the COUNTY, LCDAO, DEP. HOUSTON, DDA GARDEN, DDA KIM, and DA LACEY. Dep. HOUSTON who was motivated by his own personal prejudices and bias against Mr. Oliver, because PLAINTIFF was on state parole and could not stand any person on parole. Instead of doing what was right, DEP. HOUSTON chose to work together with the other Defendants to cover up the corrupt, false, and possibly even fabricated sample signatures. The Defendants knew that PLAINTIFF possessed a right not to be subjected to criminal charges against him based on false and fabricated evidence, but the Defendants, and each of them pursued the charges anyways, even breaking several laws along the way.

37.    Plaintiff is informed and believes and on that basis alleges that these "phantom signatures" played a key role in Defendants investigation leading up to Mr. Oliver's arrest. Defendants used PLAINTIFFS parole status to establish probable cause to arrest Mr. Oliver, even though the case was based entirely on the subjective recollections, lack of physical evidence, and lies by HUGHES.

38.    Mr. Oliver was locked up in a jail that houses 200 inmates. Contact with the prisoners is limited, and any visits are conducted through heavy Plexiglas using a telephone. Mr. Oliver's was demoralized by the loss of any meaningful contact with his children, his loss of liberty, and his loss of privacy.

39.     Mr. Oliver shared a small living area with two other inmates. Mr. Oliver was the property of the COUNTY and his days were strictly regimented. Defendants succeeded in making sure he was punished for "forging" documents and he would no longer trouble society or the delicate sensibilities of the Superior Court of California. Months passed by while his criminal trial was underway. His case was sensational and therefore newsworthy. The County, State, Federal, and American bar associations could not get enough of Defendants fabricated story: **"Pro per litigant obtains twenty million dollar default by committing forgery".** Plaintiff is informed and believes Defendants, and each of them, welcomed the media attention, and maliciously disclosed personal and private information about Mr. Oliver further sensationalizing the case. Defendants used their pulpit to falsely brand PLAINTIFF throughout the County and the Superior Courts as "the guy who forged judicial council forms."

40.     Weeks turned into a year, with no perceivable end to the nightmare Defendants had orchestrated. Mr. Oliver remained optimistic that the trial would expose the lies and deceit upon which his arrest was based. The Defendants, however, were very unstoppable. At all times, PLAINTIFF trusted City and State government agents, and believed that they would not attempt to mislead them with corrupt, false, forged, and fabricated test results of the exemplar signatures.

41.     Prior to trial, rather than contradict their prior representations of the alleged forged signatures, Defendants without notifying Mr. Oliver or his attorney, sent the genuine signatures and questioned signatures to the INV. TORRES to be tested again. The results were once again, staggering. INV. TORRES finally admitted in a new investigation report that the two sets of signatures were strikingly identical. This conclusive evidence proved that PLAINTIFF never forged any documents at all, and that Mr. Oliver was arrested and incarcerated for a crime that never occurred.

42.    Ultimately, after the signatures had been tested, Mr. Oliver's attorney filed a discovery motion to get the results and was later granted by the trial Court judge. Notwithstanding this acknowledgement, DEP. HOUSTON, INV. TORRES or even DDA GARDEN disclosed the testing results to anyone on behalf of PLAINTIFF. In fact, Defendants knew of the results, knew they were tested, and knew their testing would expose PLAINTIFFS innocence. However, DDA GARDEN stated in Court transcripts that when asked if additional signatures were or would be examined, DDA GARDEN lied and stated; "yeah I don't think we are going to doing that." To mislead PLAINTIFF into believing that no other testing would be done on these signatures, DDA GARDEN was confident PLAINTIFF would just shut up and plead guilty.

43.    On April 8th, 2015, after a yearlong incarceration, the LCDAO and DDA GARDEN moved to dismiss ALL charges against PLAINTIFF. Knowing that the case could not be proven beyond a reasonable doubt, prosecutors faced no choice but to dismiss the case. Due to the fact that DDA GARDEN dismissed the case previously, DDA KIM, DDA GARDEN, and DA LACEY knew this was their last straw. Almost fourteen months after PLAINTIFF was incarcerated, Mr. Oliver a young father of four, was released from custody owning nothing more than the clothes on his back. By the time he finally regained his freedom, Mr. Oliver lost everything. Mr. Oliver spent almost $ 5,000.00 in costs, first depleting the little money he had of his own, then by borrowing from the few lawyers, family, and friends who steadfastly believed that he would be proven innocent and were willing to support him. He also lost the love, companionship, and support of attorneys, friends and family who were, and still are, unable to grasp or believe the horror of Defendants actions. He will be forever ostracized in this County as a forger, with many people and the Court staff always mistakenly believing that he is the "pro per guy who almost got away with it". He was not only deprived of his ability to earn a living while incarcerated, but because he will

**COMPLAINT FOR CONSTITUTIONAL AND CIVIL RIGHTS DAMAGES**
**42 U.S.C. § 1983**

always be stigmatized in his local community and the courts, his ability to earn a living in the future has been severely damaged. Mr. Oliver who owns an attorney service company, has been interfered with by the Defendants. Defendants permanently stained Mr. Oliver's reputation with their lies and reckless disregard for PLAINTIFFS established Constitutional rights. He continues to suffer emotionally and financially as a direct and proximate result of Defendants investigation, fabrication of evidence, and wrongful arrest, which all preceded the subsequent prosecution and wrongful incarceration for a crime that Defendants always knew, or should have known, never occurred.

44.     The Defendants, and each of them, knew or had reason to know that Mr. Oliver would be deprived of his Constitutional rights, specifically his rights arising from the First, Fourth, Fifth, and Fourteenth Amendments, if they utilized inculpatory evidence that was corrupt, false, and fabricated to arrest and incarcerate PLAINTIFF so that the Defendants would have the civil defaults set aside. Throughout their investigation into the case of forgery, Defendants, and each of them, acted recklessly and with gross negligence by disregarding exculpatory evidence and seeking only potentially inculpatory evidence. The Defendants and each of them, colluded during their own investigation to use evidence that knew or should have known was false to establish probable cause to effectuate the arrest and subsequent incarceration of Mr. Oliver for the crime of forgery.

# FIRST CAUSE OF ACTION

## Violation of Federal Fourth Amendment – 42 U.S.C. § 1983

## (Against all Defendants and DOES 1-50)

45.     Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above.

46.     The Defendants, the individual Defendants acting under color of state law, violated Mr. Oliver' established rights guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, and the laws of the State of California, by the acts alleged above.

47.     All Defendants, and individual Defendants to this claim, at all times relevant hereto were acting under the color of state law in their capacity as City and State actors. Their acts or omissions were conducted within the scope of their official duties or employment. The private actors acted under color of law.

48.     At the time of the complained events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable search and seizures while on parole by government officials for the purposes of personal animosity, arbitrary, capricious, or harassing reasons.

49.     At all times relevant, the Defendants and each of them lacked the bare minimal probable cause to arrest and incarcerate Plaintiff. Instead of possessing actual probable cause, the Defendants used Plaintiffs parole status at their whim and caprice.

50.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person. He suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

51.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants Plaintiff suffered past and future losses of income which have caused Plaintiff to sustain damages in a sum to be determined at trial.

52.    The actions described above were taken by the Defendants with malice and with the intent to vex, annoy and harass PLAINTIFF, to inflict severe emotional distress any physical harm, and were designed and calculated to deprive Mr. Oliver of his Constitutional rights to be secure against unlawful seizure, the taking of liberty without due process of law, and equal protection of the laws, as well as his rights under federal statutes, including 42 U.S.C. §§ 1985 and 1986.

## SECOND CAUSE OF ACTION

### Violation of Federal Civil Rights – 42 U.S.C. § 1983

### (Against all Defendants and DOES 1-50)

53.    Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above.

54.    The Defendants, the individual Defendants acting under color of state law, violated Mr. Oliver' established rights guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, and the laws of the State of California, by the acts alleged above.

55.    Throughout their investigation, the Defendants and each of them knew or had reason to know that the results of the signatures by LASD personnel were corrupt, false, fabricated, and completely lacking in credibility. Nevertheless, the Defendants colluded during their investigation to use evidence they knew or should have known was false, corrupt, and fabricated to establish probable cause to effectuate the arrest and incarceration of Mr. Oliver for the crime of forgery.

56.     The Defendants knew or should have known that the deliberate fabrication of false evidence and suppression of exculpatory evidence would result in the wrongful incarceration of Mr. Oliver. The acts violated Mr. Oliver's clearly established rights under the Constitutional and federal statutory law.

57.     Although the Defendants and each of them knew that PLAINTIFF would be deprived of the equal protection of the laws by the intentional or negligent fabrication of evidence and suppression of exculpatory evidence and had the power to prevent or aid PLAINTIFF from being wrongfully arrested and later incarcerated for a crime he did not commit, neglected or refused to come forward with the truth, and expose the Defendants conspiracy to deprive PLAINTIFF of the equal protection of the laws.

58.     The actions described above were taken by the Defendants with malice and with the intent to vex, annoy and harass PLAINTIFF, to inflict severe emotional distress any physical harm, and were designed and calculated to deprive Mr. Oliver of his Constitutional rights to be secure against unlawful seizure, the taking of liberty without due process of law, and equal protection of the laws, as well as his rights under federal statutes, including 42 U.S.C. §§ 1985 and 1986.

59.     Defendants LACDAO, CITY, OCAO and OPD had a policy and custom of using, authorizing, ratifying, and/or covering up the use of corrupt, false, and also fabricated evidence during their investigations.

60.     As a direct and proximate result if the acts if the Defendants, Mr. Oliver sustained injuries and damages arising from the deprivation of his civil rights, including violations of his clearly established rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, loss of his physical liberty without due process and equal protection of the laws. This misconduct on the part of Defendants caused PLAINTIFF pain and suffering; severe emotional distress as a

result of being deprived of the love, companionship, and respect of his children, family and friends; economic damages including loss of income and paying from criminal defense costs; and humiliation, embarrassment, and injury to reputation.

## THIRD CAUSE OF ACTION

### Violation of Federal Civil Rights – Supervisor Liability

### 42 U.S.C. § 1983

### (Against LACEY, MULLEN, and DOES 1-100)

61.    Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above.

62.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants LACEY and MULLEN, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, including the right to be free from unreasonable seizures, malicious prosecution under the Fourth Amendment, interference with First Amendment and the right to procedural and substantive due process and equal protection under the Fourteenth Amendment, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

a. Failing to adequately train, supervise, and control their officers in uses of prosecutions and investigations;

b. Failing to adequately train, supervise, and control their officers in proper communication and appropriate responses to members of the public;

c. Failing to set up systems to prevent abuse by officers including the failure to properly investigate criminal case and charges;

d. Failing to discipline officers involved in abusing their authority; and

e. Condoning and encouraging their officers in the belief that they can violate the rights of persons such as the Plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

63.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person. He suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

64.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants Plaintiff suffered past and future losses of income which have caused Plaintiff to sustain damages in a sum to be determined at trial.

## FOURTH CAUSE OF ACTION

### Devereaux Violation – 42 U.S.C. § 1983

### (Against all Defendants and DOES 1-50)

65.    Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above.

66.    Defendants, and each of them Kim, Lacey, Garden, Torres, Houston, Off. Lyons, Ms. Lyons, Nash, Mullen and Hughes violated Plaintiffs clearly established procedural due process federal constitutional right to be free from criminal prosecution based on recklessly or intentionally fabricated evidence, as that specific constitutional right is explained in Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002), and Devereaux v. Abby, 263 F.3d 1070 (9th Cir. 2001), and other controlling case law.

67. The foregoing fabrications of false facts and evidence collectively, and in some cases singly, as made and proselytized, materially affected the felony charging recommendations and decisions made against PLAINTIFF, materially affected the outcome of the Preliminary Hearing, and/or otherwise materially affected the criminal prosecution of PLAINTIFF. Among other things, prejudice to PLAINTIFF ensued from the fabrications insofar as he was forced to defend himself against felony fraud and forgery charges, all at great financial and emotional expense to PLAINTIFF and at PLAINTIFFS loss of liberty. The foregoing conduct of the individual defendants was malicious and oppressive, warranting the award of punitive damages against each of them pursuant to California Code of Civil Procedure § 3294.

## FIFTH CAUSE OF ACTION

### Malicious Prosecution - 42 U.S.C. § 1983

### (Against All Defendants, and DOES 1-50)

68. Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above.

69. All Defendants and each of them, violated PLAINTIFFS clearly established substantive due process federal constitutional right to be free from criminal charges brought, or continued to be prosecuted, in bad faith and without probable cause *with the intent* to subject Mr. Oliver to denial of another constitutional right, as that Fourteenth Amendment substantive due process right is explained in controlling U.S. Supreme Court and Ninth Circuit Court of Appeals decisions including but not limited to Albright v. Oliver, 510 U.S. 266 (1994) (plurality plus concurring opinions), United States v. Salerno, 481 U.S. 739 (1987), Awabdy v. City of Adelanto, 368 F.3d 1062 (9th Cir. 2004).

70.     At all times relevant, the underlying criminal charges against PLAINTIFF were without probable cause and terminated in his favor.

71.     The Defendants, and each of them intentionally, deliberately and/or recklessly caused, recommended, prompted, encouraged, aided, induced, pressed, or otherwise carried out the malicious prosecution of PLAINTIFF for the purpose of, or by the intentional (i.e., deliberate) or reckless means of, or with the obvious effect of, denying or depriving PLAINTIFF of one or more specific federal constitutional procedural due process rights, as guaranteed by the federal constitution.

## SIXTH CAUSE OF ACTION

**Failure to Properly Screen and Hire - 42 U.S.C. § 1983, Monell Claim**

**(Against All LACEY, COUNTY, LACDAO, CITY, MULLEN, and DOES 1-50)**

72.     Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above.

73.     The COUNTY, LACEY, LACDAO, CITY, and MULLEN as a matter of custom, practice and policy, failed to adequately and properly screen and hire their Defendant employees.

74.     The failure of Defendants, their agents, servants, and employees to properly screen and hire the Defendant employees as a matter of policy, custom, and practice, in the exercise of their functions, was deliberately indifferent to the Constitutional rights to Plaintiff and done with conscious disregard for the dangers of harm and injury to Plaintiff and others similarly situated.

75.     Due to the acts of the Defendants, the failure to properly screen and hire their agents, officers, and deputies the continued employment of the Defendant officers, deputies, and agents, a clear and present danger exists to the residents and citizens of the County of Los Angeles.

76.    Furthermore, the lack of adequate screening and hiring practices by Defendants evidence a deliberate indifference to the rights of the Plaintiff and others in their position.

77.    Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect citizens, residents, parolees, innocent people and the general public from official misconduct.

78.    The conduct alleged herein violated PLAINTIFF'S rights alleged above which has legally, proximately, foreseeably and actually caused PLAINTIFF to suffer general and special damages according to proof at the time of trial.

79.    Plaintiff is entitled to recover reasonable attorney fees under 42 U.S.C. § 1983.

80.    In committing the acts described above, PLAINTIFF is informed and believe the Defendants LACEY, and MULLEN acted with oppression, fraud, or malice, entitling PLAINTIFF to an award of punitive damages against LACEY and MULLEN in an amount according to proof at the time of trial.

## SEVENTH CAUSE OF ACTION

### State Law Claim: Intentional Infliction of Emotional Distress
### (Against All Individual Defendants and DOES 1-50)

81.    Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above.

82.    By their conduct directed towards or intended to affect PLAINTIFF as pled here-above and by other acts and omissions, all the individual Defendants, and each of them, engaged in outrageous conduct intolerable in a civilized community. These Defendants, and each of them, abused a position of authority or a relationship that gave them real or apparent power to affect PLAINTIFFS interests. The

Defendants, and each of them, knew that, under the circumstances, PLAINTIFF was particularly vulnerable to emotional distress; and each of them knew, or reasonably should have known, that there conduct or inaction would likely result in harm to PLAINTIFF due to mental distress. These Defendants, and each of them, acted with reckless disregard of the probability that PLAINTIFF would suffer emotional distress, and/or intended to cause PLAINTIFF emotional distress. As a result, PLAINTIFF did suffer severe emotional distress; and the acts and omissions of these Defendants, and each of them, were a substantial factor in causing PLAINTIFF severe emotional distress. All of which injury is permanent.

## EIGHTH CAUSE OF ACTION

### Violation of Bane Act – California Code of Civil Procedure § 52.1

### (Against all individual Defendants and DOES 1-50)

83.    Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above.

84.    Defendants KIM, LACEY, GARDEN, TORRES, HOUSTON, OFF. LYONS, NASH, MULLEN, HUGHES, and Ms. LYONS, acting under the color of authority, interfered with or attempted to interfere with the constitutional rights to petition the Court, his liberty and property by threatening or committing acts involving violence, coercion or intimidation.

85.    On information and belief, PLAINTIFF reasonably believed that if he exercised his constitutional rights, that the Defendants KIM, LACEY, GARDEN, TORRES, HOUSTON, OFF. LYONS, NASH, MULLEN, HUGHES, and Ms. LYONS would commit acts involving violence, threats, coercion or intimidation against his person.

86. Defendants KIM, LACEY, GARDEN, TORRES, HOUSTON, OFF. LYONS, NASH, MULLEN, HUGHES, and Ms. LYONS injured PLAINTIFF to prevent PLAINTIFF from exercising his rights or to retaliate against PLAINTIFF for having exercised his rights.

## NINTH CAUSE OF ACTION

### Permanent Injunction

### (Against All Defendants and DOES 1-50)

87. Plaintiff re-alleges and re-incorporates by reference of all said paragraphs above

88. Defendants wrongful conduct as alleged above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff and all similarly situated individuals.

89. Plaintiff and all similarly situated individuals have no adequate remedy at law for their injuries. The Defendants are unrestrained in their ability to waste hard earned taxpayer money, and can escape liability by using the great government power and resources entrusted to them by the people. If left unfettered, Defendants, and each of them, can systemically ad continuously violate the Constitutional rights of individuals, including the Plaintiff, Anthony Allen Oliver.

90. There are no countervailing benefits to violating the Constitutional rights of individuals, and as long as Defendants, and each of them are allowed to continue to investigate, incarcerate, and wrongfully convict persons for their own personal greed and selfish ambitions, the public, including Plaintiff, will continue to be irreparably harmed.

COMPLAINT FOR CONSTITUTIONAL AND CIVIL RIGHTS DAMAGES
42 U.S.C. § 1983

91.     Therefore, the Court should order the dismissal of the criminal case against Plaintiff "with prejudice," and order the Defendants to cease further investigation of the Plaintiff to prevent continued violations of his rights.

92.     The Court should also order the LOS ANGELES COUNTY DISTRICT ATTORNEYS OFFICE, and JACKIE LACEY to remove the arrest of Plaintiff from his criminal record.

93.     The Court should also order the Los Angeles County District Attorney's Office and Jackie Lacey to arrest and charge ERIK HUGHES, MATTHEW LYONS, and CYNTHIA LYONS with perjury and fraud.

94.     Further, the Court should order the LACDAO, COUNTY, CITY, OCDA, OPD, and LASD, (by and through its agents and employees) to require their agents and employees to undergo additional mandatory training and testing to ensure their agents and employees understand and comply with their legal duties with respect to the proper handling and use of evidence during criminal investigations.

**COMPLAINT FOR CONSTITUTIONAL AND CIVIL RIGHTS DAMAGES**
**42 U.S.C. § 1983**

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Anthony Allen Oliver prays for judgment as follows:

1.      For compensatory damages from Defendants, jointly and severally in an amount not less than $ 20,000,000.00;

3.      For non-economic damages due to the malicious prosecution:

4.      For punitive damages pursuant to Cal. Civ. Code § 3294 against the individual Defendants pursuant to *Smith v. Wade*, 461 U.S. 30 (1983);

5.      For costs of suit pursuant to Cal. Civ. Code § 1032.

6.      For an order directing Defendants to dismiss the criminal case against Plaintiff with prejudice;

7.      For an order directing Defendants to remove the arrest from Plaintiffs Criminal record;

8.      For an order directing the Los Angeles County District Attorney's office to arrest and charge ERIK HUGHES, MATTHEW LYONS, and CYNTHIA LYONS with perjury and fraud.

9.      Further, the Court should order the LACDAO, COUNTY, CITY, OCDA OPD, and LASD, (by and through its agents and employees) to require their agents and employees to undergo additional mandatory training and testing to ensure their agents and employees understand and comply with their legal duties with respect to the proper handling and use of evidence during criminal investigations.

10.     For any other relief as this Court deems just and proper.


DATED: 3 · 25 · 15                    ANTHONY ALLEN OLIVER


                                      By: _____
                                          Plaintiff, In Pro Per

---

**- 30 -**
**COMPLAINT FOR CONSTITUTIONAL AND CIVIL RIGHTS DAMAGES**
**42 U.S.C. § 1983**

1

## **DEMAND FOR JURY TRIAL**

2          PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure,

3   Rule 38, and the Seventh Amendment to the United States Constitution, Plaintiff

4   Anthony Allen Oliver respectfully demands a trial by jury against the Defendants, and

5   each of them, for each cause of action so triable.

6

7

8   DATED: 5 25 15                         ANTHONY ALLEN OLIVER

9                                   By: _____

10                                          Plaintiff, In Pro Per

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

------

**- 31 -**
**COMPLAINT FOR CONSTITUTIONAL AND CIVIL RIGHTS DAMAGES**
**42 U.S.C. § 1983**



Anthony Allen Oliver
6320 Canoga Avenue #1500
Woodland Hills, California 91367

U.S POSTAGE
PAID
CANOGA PARK, CA
91304
MAY 21, 15
AMOUNT
$9.25
00102858-18

7013 3020 0000 0037 9470

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL

7013 3020 0000 0037 9470

PRIORITY MAIL
★ ★ ★ ★ ★
TRACKED
INSURED
UNITED STATES
POSTAL SERVICE.
For Domestic Use Only

Attn:
Civil Filing office

United States District Court
Attn: Civil Filing office Clerk
312 North Spring Street
Los Angeles, California - 90012



Attn
Civil filing office

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ )

Anthony Allen Oliver

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

County of Los Angeles, et al.,

**(b)** County of Residence of First Listed Plaintiff  Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  County of Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
6320 Canoga Avenue, # 1500
Woodland Hills, California 91367
Tel: 818-207-1305

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Unknown

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT:** $ 20,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. 1983 - Violation of Federal Constitutional Civil Rights

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☒ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:

CV-71 (10/14)    CIVIL COVER SHEET    CV15-3995    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court?<br>☐ Yes  ☒ No<br><br>If "no," skip to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br>☐ Yes  ☒ No<br><br>If "no," skip to Question C.  If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right*  ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division.  Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO.  Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)<br><br>*check one of the boxes to the right*  ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division.  Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO.  Your case will initially be assigned to the Western Division.  Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br>☐ Yes  ☒ No<br><br>If "no," skip to Question D.  If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right*  ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division.  Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO.  Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)<br><br>*check one of the boxes to the right*  ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division.  Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO.  Your case will initially be assigned to the Western Division.  Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | | **A.**<br>Orange County | **B.**<br>Riverside or San Bernardino County | **C.**<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | | ☐ | ☐ | ☒ |

| **D.1.  Is there at least one answer in Column A?**<br>☐ Yes  ☒ No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E,  below, and continue from there.<br>If "no," go to question D2 to the right.  ➡ | **D.2.  Is there at least one answer in Column B?**<br>☐ Yes  ☒ No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E,  below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below.<br>⬇ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above:  ➡ | WESTERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?     ☒ NO     ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO     ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____     DATE: 5 - 25 - 15

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |